**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

BEST BUY STORES, L.P., )
)
      Plaintiff, )
)
v. ) No. 2:14-CV-04299-NKL
)
WALTERS ACQUISITIONS, INC., )
)
      Defendant. )

**ORDER**

Plaintiff Best Buy Stores, L.P. leased retail space from Defendant Walters Acquisitions, Inc. The roof on Best Buy's store was improperly installed, leaks, and must be replaced. The parties dispute who should pay for the replacement. Best Buy now moves for dismissal of Walters' counterclaims. [Doc. 20.] For the reasons discussed below, Best Buy's motion is granted.

### I.    Background[1]

In November 2003, Walters, as landlord, and Best Buy, as tenant, entered into a lease of improved real property.[2] Walters alleges that when the parties entered into the

---

    [1] For purposes of deciding Best Buy's motion to dismiss Walters' counterclaims, the Court accepts Walters' factual allegations as true and construes them in the light most favorable to Walters. *See Stodghill v. Wellston Sch. Dist.,* 512F.3d 472, 476 (8th Cir. 2008).
    [2] Both Best Buy in its First Amended Complaint [Doc. 17], and Walters in its Answer, Affirmative Defenses and Counterclaim [Doc. 18], refer to an "attached" copy of the lease. The Court has not located any lease attached to either parties' pleading. Walters did, however, attach the lease to its Suggestions in Opposition to Best Buy's Motion to Dismiss. [Doc. 27-1.] Because the lease is a document necessarily embraced

lease, they "understood and agreed that Best Buy's Construction Plans included the plan to install a new roof, obtain a warranty on that roof and transfer the warranty to Walters," [Doc. 18, p. 7], and that the installation would be performed properly. Nowhere in the lease was a plan to install a new roof, obtain a warranty on the roof and transfer the warranty to Walters explicitly set out or explained.

Article 10 of the lease, "Repair of the Premises," included the provision that Walters was generally responsible for structural repairs of the premises, including the roof, and a self-help provision for Best Buy:

> Landlord shall make all structural repairs to the Premises, whether interior or exterior, keep the Premises watertight, and shall repair, replace and maintain in good condition the exterior of the Premises including without limitation the roof [and] roof membranes[.]…
>
> \*\*\*
>
> In performing its obligations under this Article or elsewhere under this Lease, Landlord shall not unreasonably interfere with Tenant's normal business operations. If Landlord fails to undertake and complete to Tenant's satisfaction the repairs required under this Article or elsewhere under this Lease within sixty (60) days after written notice from Tenant, Tenant shall have the right to make such repairs on behalf of Landlord and to deduct the reasonable cost thereof from the fixed rent and other charges otherwise payable hereunder.
>
> \*\*\*

[Doc. 27-1, p. 13.]

---

by the pleadings, and has been made part of the record, it is not a matter outside the pleadings and may be considered by the Court in deciding the motion to dismiss the counterclaim. *See Ashanti v. City of Golden Valley,* 666 F.3d 1148, 1151 (8th Cir. 2012), and *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.,* 616 F.3d 872, 876 (8th Cir. 2010).

The lease also included a merger provision:

> 37.3 Entire Agreement. This instrument shall merge all undertakings between the parties hereto with respect to the Premises and upon execution by both parties shall constitute the entire lease agreement, unless thereafter modified by both parties in writing. In the event Landlord shall execute this Lease prior to Tenant, Tenant shall have ten (10) days to accept the terms hereof and to execute this Lease, during which time Landlord's execution shall constitute an irrevocable offer.

[Doc. 27-1, p. 31.]

The lease's table of contents lists exhibits, including Exhibit D, "Store Floor Plans, Construction Plans and Specifications and Storefront, Signage and Pylon Signs." [Doc. 27-1, p. 5.] The exhibit section at the end of the lease contains a page marked:

> EXHIBIT D
> Construction Plans and Specifications
> [to be attached at a later date
> (after the Contingency described in Section 38.13 is satisfied)]

[Doc. 27-1, p. 44.] The contingency referred to was termination of the lease of the tenant in possession of the premises at the time Walters and Best Buy executed the lease. This contingency was satisfied in January 2004. Nonetheless, no construction plans and specifications were subsequently attached to the lease. Walters pleads that the "failure to attach the Construction Plans and/or to specify elsewhere in the Lease the understanding with respect to the installation of the new roof and transfer of warranty…was the result of pure inadvertence and/or mistake of both parties." [Doc. 18, p. 6, Fifth Affirmative Defense.]

3

In February 2004, Best Buy issued construction plans, specifications and drawings that included the installation of a new roof on the premises. The new roof was installed between February and July 2004. "Best Buy acquired a full warranty for the roofing material from the manufacturer of the material," [Doc. 18, p. 7, ¶ 10], and transferred that warranty to Walters. The roof leaked numerous times beginning in 2008. From 2008 until early 2014, Best Buy notified Walters of roof leaks as they occurred, Walters submitted claims to the manufacturer pursuant to the warranty, and the manufacturer honored each claim. In early 2014, the manufacturer disclaimed further liability for repairs under the warranty, on the basis that the roof had been improperly installed and that the improper installation was the cause of the leaks. "The improper installation [of the roof] directly and proximately caused the roof to fail and need replacing." [*Id.*, p. 18, ¶ 14.]

Best Buy refused to contribute to the cost of replacement and under Article 10 of the lease demanded that Walters replace the roof at Walters' cost. Walters refused to replace the roof at its cost. Best Buy notified Walters in October 2014 that Best Buy had ordered materials and hired a contractor to replace the roof, and intended to claim self-help remedies under Article 10.

Walters filed its counterclaims in October 2014. [Doc. 18.]

**II.    Discussion**

Walters' counterclaim consists of three counts. In Count I, Walters requests declaratory judgment concerning the parties' rights and obligations under the lease, including a declaration that Best Buy breached its obligation under the contract by

4

"improperly and negligently" installing the new roof, and that Walters is not in default of its contractual obligations. [Doc. 18, p. 9.]

In Count II, breach of contract, Walters alleges "Best Buy breached the parties' agreement by improperly and negligently installing the new roof"; that as a direct and proximate result of the breach, the roof leaked and needs to be replaced, and "the roof warranty was rendered ineffective"; and that Walters was thereby damaged. [*Id.*, pp. 9-10, ¶¶ 22-27].

Count III is for equitable indemnity. Walters pleads that it "is innocent and Best Buy is responsible for the conditions that have caused the roof to need repair, and have caused the warranty to become ineffective, including improper and negligent installation of the roof." [*Id.*, p. 10, ¶ 29.] "It would be inequitable and unjust to require Walters" to pay for the replacement roof, and Walters is "therefore entitled to equitable indemnity from Best Buy for all or a portion of the costs to repair and replace the roof[.]" [*Id.*, p. 10, ¶¶ 30-31.]

Generally, "[c]ontract interpretation is a question of law." *Intertel, Inc. v. Sedgwick Claims Management Svs., Inc.,* 204 S.W.3d 183, 196 (Mo. Ct. App. 2006) (citing *Lacey v. State Bd. of Registration for the Healing Arts,* 131 S.W.3d 831, 838 (Mo. Ct. App. 2004)). "The cardinal principle for contract interpretation is to ascertain the intention of the parties and to give effect to that intent." *Intertel,* 204 S.W.3d at 196 (citing *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. 1995)). To determine intent, a court may consider not only the contract, but "subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances

5

surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties." *Intertel,* 204 S.W.3d at 196. Further, a "contract must be construed as a whole so as not to render any terms meaningless, and a construction that gives a reasonable meaning to each phrase and clause and harmonizes all provision is preferred over a construction that leaves some of the provisions without function or sense." *State ex rel. Riverside Pipeline Co., L.P. v. Public Svce. Comm'n,* 215 S.W.3d 76, 84 (Mo. 2007) (citing *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428 (Mo. 2003)). *See also* Restatement (2nd) of Contracts, § 203 and Cmt. b (1981) (same).

### A. Integration of the lease

As a threshold matter, Walters argues that the lease should be interpreted by the Court to include Best Buys' agreement to install the new roof even though there is an integration clause in the lease signed by the parties and the lease does not explicitly refer to such an agreement.

When parties to a contract have "reduced their final and complete agreement in writing, the parol evidence rule" prohibits variation or contradiction of the writing. *State ex rel. Mo. Highway and Transp. Comm'n v. Maryville Land Partnership,* 62 S.W.3d 485, 489 (Mo. Ct. App. 2001) (citing *Jake C. Byers, Inc. v. J.B.C. Investments,* 834 S.W.2d 806, 812 (Mo. Ct. App. 1992)). Thus, before considering parol evidence, a court must determine whether a written agreement represents a final expression of one or more terms of the agreement, that is, whether the agreement is integrated. *Maryville Land*

*Partnership,* 62 S.W.3d at 489 (citing *Wulfing v. Kansas City Southern Industries, Inc.,* 842 S.W.2d 133, 146 (Mo. Ct. App. 1992), and Restatement (2nd) Contracts, § 209(1) (1981)). If an agreement is "complete…on its face, it is conclusively presumed to be a final as well as a complete agreement between the parties," and "even consistent additional terms within its scope are precluded." *Maryville Land Partnership,* 62 S.W.3d at 489-90 (citing *Jake C. Byers, Inc.,* 834 S.W.2d at 812; *Centerre Bank of Kansas City v. Distributors,* 705 S.W.2d 42, 51 (Mo. App. W.D.1985); and Restatement (2nd) Contracts, § 209, Cmt. a (1981)).

But if "the writing omits a consistent additional term that is either agreed to for separate consideration or might naturally have been omitted in the circumstances, the agreement is considered only partially integrated and collateral facts and circumstances may be introduced to prove consistent additional terms." *Maryville Land Partnership,* 62 S.W.3d at 489 (citing *Craig v. Jo B. Gardner, Inc.,* 586 S.W.2d 316, 324 (Mo. 1979), and Restatement (2nd) Contracts (1981) § 216(2)).

As explained below, because the statute of limitations has run on any claim that Walters may have for Best Buy's failure to replace the roof properly, the Court need not resolve whether the parties' lease or some other separate and enforceable agreement, required Best Buy to replace the roof. Furthermore, the facts alleged do not support a claim for equitable indemnity.

### B. Statute of limitations, and Counts I and II, declaratory judgment and breach of contract

A five-year statute of limitations applies to requests for declaratory judgment and claims for breach of contract, and begins to run when the action accrues. Mo. Rev. Stat. §§ 516.120(1-2), and 527.010–.140. "The cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment[.]" Mo. Rev. Stat. § 516.100. Actual knowledge of one's cause of action is not what makes one's damages capable of ascertainment. *See Judy v. Arkansas Log Homes, Inc.,* 923 S.W.2d 409, 417 (Mo. Ct. App. 1996) (rejecting argument that cause of action cannot accrue until plaintiff connects the injury with its cause) (citing *Ruhling v. Robert Dawes Const. Co.,* 610 S.W.2d 403 (Mo. Ct. App. 1980)). "[D]amage is ascertainable when the fact of damage 'can be discovered or made known,' not when a plaintiff actually discovers injury or wrongful conduct," *H.R.B. v. J.L.G.*, 913 S.W.2d 92, 95 (Mo. Ct. App. 1995) (quoting *Sheehan v. Sheehan*, 901 S.W.2d 57, 58-59 (Mo. 1995)), or knows "the exact amount of damage," *Business Men's Assurance Co. of America v. Graham,* 984 S.W.2d 501, 507 (Mo. 1999) (citation omitted). The capable-of-ascertainment standard is objective. The relevant inquiry is when would a reasonable person have been put on notice that an injury may have occurred. *Marianist Province of the U.S. v. Ross,* 258 S.W. 3d 809, 811 (Mo. 2008).

In *Ruhling v. Robert Dawes Const. Co.,* 610 S.W.2d 403, 406 (Mo. Ct. App. 1980), the court held that a cause of action for breach of an implied warranty of fitness

8

accrued when a newly constructed residence was delivered in its alleged defective condition and the roof began leaking within a few days of the homeowners' move-in. The statute of limitations began running at that time. *Id.*

The court of appeals reached a similar conclusion in *Arst v. Max Barken, Inc.*, 655 S.W.2d 845 (Mo. Ct. App. 1983). There, homeowners discovered cracks and shifting in the foundation within one month of moving into their residence in 1969. They notified the builder in 1969, and again in 1971 and 1974. *Id.* at 846. The builder attempted to make repairs but ultimately declined to accept further responsibility. *Id.* The court held that the statute of limitations had begun to run in 1969. *Id.* at 847.

Walters argues that it "first had knowledge of an actionable wrong and/or something that put it on notice to inquire" only in 2014, when the manufacturer of the roofing materials "disclaimed liability for future repairs, bringing to light" the improper installation. [Doc. 27, p. 18.] Its argument for a 2014 trigger date is not persuasive. Actual knowledge of one's cause of action is not what makes one's damages capable of ascertainment. *See Judy,* 923 S.W.2d at 417 (citing *Ruhling,* 610 S.W.2d at 406). Rather, the question is when would a reasonably prudent person been on notice of a potentially actionable injury and have undertaken to ascertain the extent of the injury. Waiting for others to discover the source of the problem is not contemplated by that standard. If the problem is a defect in the construction of the roof, as Walters describes in its pleading, then it was certainly capable of ascertainment when the roof started to leak. Indeed, Walters does not in its argument point to any facts that would suggest a

defect in construction is more likely to be discovered years after the leak began than closer in time to the construction of the roof.

In short, whether, as Best Buy argues, the statute of limitations began to run when the roof was installed in 2004, the statute certainly began to run no later than 2008, when the roof began to leak. Walters had actual notice that the roof was leaking beginning in 2008, and Walters' current cause of action was therefore discoverable or could have been made known at that time.

Because the 5-year statute of limitations began running no later than December 31, 2008, it expired on December 31, 2013, before Walters filed its lawsuit. Walters' declaratory judgment and breach of contract claims are therefore time-barred.

### C. Count III, equitable indemnity

Missouri law recognizes three classes of indemnity: express contractual indemnity; implied contractual, or implied-in-fact, indemnity; and equitable, or implied-in-law, indemnity. *American Nat'l Property and Cas. Co. v. Ensz & Jester, P.C.,* 358 S.W.3d 75, 84 (Mo. Ct. App. 2011). Here, the contract contains no express indemnity provision, nor does Walters claim that the contract implies one.

Rather, Walters relies on equitable indemnity, but the claim fails as a matter of law. Equitable indemnity does not apply where the basis of the duty allegedly owed arises only from a contract. Put another way, Missouri law provides for equitable indemnity in the absence of a contract. *See State ex rel. Manchester Ins. & Indemnity Co. v. Moss,* 522 S.W.2d 772, 775 (Mo. 1975). Walters alleges that a contract exists here and therefore cannot rely on equitable indemnity.

Further, equitable indemnity requires a special relationship between the parties, or special circumstances.  *See Ensz & Jester, P.C.,* 358 S.W.3d at 84-85.  Here, the parties are sophisticated business entities that negotiated and entered into a multi-million dollar lease of a large parcel of improved real property, "prime retail space" according to Walters' pleading.  [Doc. 18, p. 7, ¶ 3.]  Walters points to no case involving similar circumstances in which a court has held that equitable indemnity applied, and the Court is aware of none.  As a matter of law, in view of the contract and circumstances as a whole, no special relationship or special circumstances exist to support a claim of equitable indemnity.

Walter's Count III is dismissed.

### III. Conclusion

Plaintiff Best Buy Stores' motion to dismiss Defendant Walters Acquisitions' counterclaims, [Doc. 20], is granted, with prejudice.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:  February 9, 2015  
Jefferson City, Missouri